FILED
United States Court of Appeals
Tenth Circuit

April 9, 2015

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CONAGRA FOODS, INC., f/k/a Conagra, Inc.; SWIFT-ECKRICH, INC.,

     Plaintiffs - Appellants,

and

KRAFT FOODSERVICE, INC.; SAFEWAY, INC.; PHILLIPS CONNECTIONS, INC., d/b/a Phillips Connections and Hanover, Inc.,

     Plaintiffs,

v.

AMERICOLD LOGISTICS, LLC; AMERICOLD REALTY TRUST,

     Defendants - Appellees.

No. 13-3277
(D.C. No. 2:13-CV-02064-JWL-KGS)
(D. Kan.)

_____

**ORDER**
_____

Before **LUCERO**, **MURPHY**, and **McHUGH**, Circuit Judges.
_____

     This matter is before the court, *sua sponte*, to amend the Opinion issued originally on January 27, 2015. The amendment is limited to a single sentence in the conclusion of the decision at page 15. A copy of the new Opinion is attached to this Order, and the

clerk of court is directed to file the amended decision *nunc pro tunc* to the original filing date.

As directed in our order dated March 23, 2015, issuance of the mandate is stayed until June 22, 2015, and if a petition for writ of certiorari is filed, will continue to be stayed until the Supreme Court's final disposition.

Entered for the Court

ELISABETH A. SHUMAKER, Clerk

FILED
United States Court of Appeals
Tenth Circuit

January 27, 2015

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CONAGRA FOODS, INC., formerly
known as Conagra, Inc.; SWIFT-
ECKRICH, INC.,

        Plaintiffs - Appellants,

    and

KRAFT FOODSERVICE, INC.;
SAFEWAY, INC.; PHILLIPS
CONNECTIONS, INC., doing business as
Phillips Connections and Hanover, Inc.

        Plaintiffs,

    v.

AMERICOLD LOGISTICS, LLC;
AMERICOLD REALTY TRUST,

        Defendants - Appellees.

No. 13-3277

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. NO. 2:13-CV-02064-JWL-KGS)**

John M. Duggan (Deron A. Anliker and Andrew I. Spitsnogle, with him on the
briefs), Duggan Shadwick Doerr & Kurlbaum LLC, Overland Park, Kansas, for
Plaintiffs-Appellants.

Michael D. Pospisil (John M. Edgar with him on the briefs), Edgar Law Firm
LLC, Kansas City, Missouri, for Defendants-Appellees.

Before **LUCERO**, **MURPHY**, and **McHUGH**, Circuit Judges.

**MURPHY**, Circuit Judge.

## I. INTRODUCTION

Is the citizenship of a trust determined by exclusive reference to the citizenship of its trustees?  According to *Carden v. Arkoma Associates*, 494 U.S. 185 (1990), the answer to this question is "no."  The citizenship of a trust, just like the citizenship of all other artificial entities except corporations, is determined by examining the citizenship "of all the entity's members."  *Id.* at 195.  That being the case, the district court lacked subject matter jurisdiction over the suit underlying this appeal.  This court **remands** the matter to the district court to vacate its judgment on the merits and remand the matter to state court.

## II. BACKGROUND

Multiple plaintiffs, including ConAgra Foods, Inc. and Swift-Eckrich, Inc., brought suit in Kansas state court against Americold Logistics, LLC and Americold Realty Trust (the "Americold entities").  The Americold entities removed the case to the United States District Court for the District of Kansas.  As the basis for removal, the Americold entities asserted[1] the parties were

---

[1]The notice of removal is not part of the record on appeal.  "Nevertheless, we have authority to review [that document] because we may take judicial notice of public records, including district court filings."  *Guttman v. Khalsa*, 669 F.3d

(continued...)

completely diverse.[2]  *See* 28 U.S.C. § 1441(b).  No party challenged the propriety of removal; the district court did not address the issue.  The merits of the suit were submitted to the district court on cross-motions for summary judgment.  The district court granted summary judgment to the Americold entities.  ConAgra and Swift-Eckrich brought a timely merits appeal.

After the parties filed their merits briefs, this court noted a potential jurisdiction defect in the notice of removal.  *See Qwest Corp. v. Pub. Utils.*

---

[1](...continued)
1101, 1127 n.5 (10th Cir. 2012).

[2]The notice or removal averred as follows:

> 4.  Plaintiffs are all incorporated in . . . Delaware. . . .

> 5.  Americold Realty Trust is a Maryland real estate investment trust. . . .

> 6.  None of the Plaintiffs . . . have their principal place of business in Maryland. . . .

> 7.  Americold Logistics, LLC is a limited liability company. . . .  [F]or purposes of diversity jurisdiction, a limited liability company is treated as a limited partnership.  The citizenship of a limited partnership "is deemed to be that of the persons composing such association." . . .

> 8.  Americold Logistics, LLC is a wholly owned subsidiary of Americold Realty Trust. . . .

> . . . .

> 10.  Neither Americold Logistics, LLC nor Americold Realty Trust is a citizen of Kansas, the forum state.

*Comm'n of Colo.*, 479 F.3d 1184, 1191 (10th Cir. 2007) (holding this court has "an independent duty to ensure that the district court[ ] properly asserted jurisdiction" (quotation omitted)).   We ordered the Americold entities to file a supplemental brief addressing the following two questions:

> 1. Was the [Americold entities'] Notice of Removal sufficient to establish diversity jurisdiction in that the Notice did not establish the citizenship of the beneficial shareholders or beneficiaries of the Americold Realty Trust?

> 2. If the Notice of Removal did not establish diversity jurisdiction, what curative facts, if any, may the [Americold entities] aver to correct this defect in this appeal?

In their supplemental brief, the Americold entities assert the omission of the citizenship of the beneficiaries of Americold Realty Trust from the notice of removal is not a jurisdictional defect because a trust's citizenship is determined exclusively by the citizenship of its trustees.  In support of this assertion, they rely on *Navarro Savings Ass'n v. Lee*, 446 U.S. 458 (1980).  They further assert that, although there is a split of authority on this issue, the approach they advocate is the majority position.  Finally, they contend this court has, "on at least three occasions, indicated that under *Navarro*, where a trustee actively controls a trust, the trustee's citizenship controls for purposes of diversity." Appellees' Supplemental Br. at 3 (citing *Ravenswood Inv. Co., L.P. v. Avalon Corr. Servs.*, 651 F.3d 1219, 1222 n.1 (10th Cir. 2011); *Sola Salon Studios, Inc. v. Heller*, 500 F. App'x 723, 728 n.2 (10th Cir. 2012) (unpublished); *Lenon v. St.*

-4-

*Paul Mercury Ins. Co.*, 136 F.3d 1365, 1371 (10th Cir. 1998)).  ConAgra Foods

and Swift-Eckrich concur in the analysis set out in the Americold entities'

supplemental brief.

### III.  ANALYSIS

Because it is the lynchpin of the parties' arguments in favor of diversity

jurisdiction, this court starts with the Supreme Court's decision in *Navarro*.  In

*Navarro*, trustees of a "business trust," suing in their own names, brought an

action in federal district court for breach of contract.  446 U.S. at 459.  The

defendants disputed the existence of diversity jurisdiction, claiming the

beneficiaries were the real parties to the controversy and the citizenship of the

beneficiaries, from whom the defendants were not diverse, should control.  *Id.* at

459-60.  *Navarro* described the controlling question as follows: "[W]hether the

trustees of a business trust may invoke the diversity jurisdiction of the federal

courts on the basis of their own citizenship, rather than that of the trust's

beneficial shareholders."  *Id.* at 458.

To answer that question, the Court began by recognizing a long-established

principle of diversity jurisdiction: "[T]he 'citizens' upon whose diversity a

plaintiff grounds jurisdiction must be real and substantial parties to the

controversy."  *Id.* at 460.  The Court also recognized that, with the exception of

corporations, "only persons could be real parties to the controversy."  *Id.* at 461.

Thus, when persons composing an unincorporated association "sue in their

-5-

collective name, they are the parties whose citizenship determines the diversity jurisdiction." *Id.* Nevertheless, the Court noted, *Navarro* did not involve a suit by an unincorporated association. *Id.* at 462. Because the suit was brought by the trustees in their own name, the question was whether the trustees were "real parties to th[e] controversy." *Id.* On that point, the Court identified almost two centuries of precedent dictating "a trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others." *Id.* at 464.

The trust at issue in *Navarro* gave the trustees exclusive authority over trust property. *Id.* at 459. The declaration of trust "authorized the trustees to take legal title to trust assets, to invest those assets for the benefit of the shareholders, and to sue and be sued in their capacity as trustees." *Id.* at 464. The shareholders, in contrast, did not have any such authority. *Id.* All this being the case, the Court concluded the trustees in *Navarro* could "sue in their own right, without regard to the citizenship of the trust beneficiaries." *Id.* at 465-66.

As noted by the parties in this appeal, several circuits have relied on *Navarro* for the proposition that, for diversity purposes, the citizenship of a trust is based on the citizenship of its trustees. *See, e.g.*, *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 397 n.6 (5th Cir. 2009); *Johnson v. Columbia Props. Anchorage, L.P.*, 437 F.3d 894, 899 (9th Cir. 2006); *May Dept. Stores Co. v. Fed. Ins. Co.*, 305 F.3d 597, 599 (7th Cir. 2002); *E.R. Squibb & Sons, Inc. v. Accident & Cas.*

*Ins.* Co., 160 F.3d 925, 931 (2d Cir. 1998). The problem for the parties, however, is that none of these circuits have addressed how the Supreme Court's decision in *Carden* bears on this question. That is, in each of the cases identified above, the court cited uncritically to *Navarro* as establishing that a trust always has the citizenship of its trustees, without regard to whether it was the trust or the trustee that was the party to the suit. As *Carden* makes clear, however, *Navarro* does not support such a broad proposition. Instead, *Navarro* stands for the far more limited proposition that if a trustee is a proper party to bring a suit on behalf of a trust, it is the trustee's citizenship that is relevant, rather than the trust's beneficiaries. *Carden*, 494 U.S. at 188 n.1, 191-92. When the trust itself is a party to litigation, however, the trust's citizenship is derived from the citizenship of all it members. *Id.* at 192-94.

The question before the Court in *Carden* was the following: "[W]hether, in a suit brought by a limited partnership, the citizenship of the limited partners must be taken into account to determine diversity of citizenship among the parties." *Id.* at 186. The answer to that question, according to the Court, depended on two subsidiary questions: whether (1) "a limited partnership may be considered in its own right a 'citizen' of the State that created it"; or (2) a federal court must focus exclusively on a limited partnership's general partners in determining whether complete diversity of citizenship exists. *Id.* at 187. In answering these questions, *Carden* made clear *Navarro* did not in any way

address the question of how a court should determine the citizenship of an *entity* that is a party to a lawsuit.

*Carden* begins its analysis of the first subsidiary question—whether a limited partnership could be considered a citizen of the state that created it—by recognizing the Court had, as a matter of historical anomaly, long treated corporations as citizens of their creator states. *Id.* at 187-88, 196-97. By equally long-standing tradition, however, the Court "just as firmly resisted extending that treatment to other entities." *Id.* at 189. The limited partnership argued, however, that *Navarro* represented an exception to this rule. The Court rejected this proposition and, in so doing, held *Navarro* simply did not address the question of how to determine the citizenship of a trust. *Id.* at 191-92. Instead, *Navarro* addressed the far more limited question of "whether parties that were undoubted 'citizens' (viz., natural persons) were the real parties to the controversy." *Id.* at 191. And, in the opening footnote of its opinion, the *Carden* majority made clear that the test for determining whether any particular party had a real interest in the litigation is *not* coextensive with the determination of the citizenship of an artificial entity:

> The dissent reaches a conclusion different from ours primarily because it poses, and then answers, an entirely different question. It "do[es] not consider" "whether the limited partnership is a 'citizen,'" but simply "assum[es] it is a citizen," because even if we hold that it is, "we are still required to consider which, if any, of the *other citizens before the Court* as members of Arkoma Associates are real parties to the controversy." Furthermore, "[t]he only potentially

-8-

nondiverse *party* in this case is a limited partner" because "[a]ll *other parties*, including the general partners and the limited partnership itself, assuming it is a citizen, are diverse."

That is the central fallacy from which, for the most part, the rest of the dissent's reasoning logically follows. The question presented today is not which of various parties before the Court should be considered for purposes of determining whether there is complete diversity of citizenship, a question that will generally be answered by application of the "real party to the controversy" test. There are *not*, as the dissent assumes, multiple respondents before the Court, but only *one*: the artificial entity called Arkoma Associates, a limited partnership. And what we must decide is the quite different question of how the citizenship of that single artificial entity is to be determined—which in turn raises the question whether it can (like a corporation) assert its own citizenship, or rather is deemed to possess the citizenship of its members, and, if so, which members. The dissent fails to cite a single case in which the citizenship of an artificial entity, the issue before us today, has been decided by application of the "real party to the controversy" test that it describes.

*Id.* at 187 n.1 (citations omitted).

Having rejected the contention a non-corporate artificial entity could be a citizen in its own right, *Carden* moved on to the question whether the citizenship of such an entity could be determined based on "the citizenship of some but not all of its members." *Id.* at 192. *Carden* answered that question with an emphatic "no." *Id.* at 192-96. The Court again rejected the notion that *Navarro* was relevant to the question:

To support its approach, Arkoma seeks to press *Navarro* into service once again, arguing that just as that case looked to the trustees to determine the citizenship of the business trust, so also here we should look to the general partners, who have the management powers, in determining the citizenship of this

partnership.  *As we have already explained, however, Navarro had nothing to do with the citizenship of the "trust," since it was a suit by the trustees in their own names.*

*Id.* at 192-93 (emphasis added).  After surveying more than a century of Supreme Court precedent, *Carden* distilled the following rule for determining the citizenship of a non-corporate artificial entity:

> [W]e reject the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the entity's members.  We adhere to our oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of all the members, the several persons composing such association, each of its members.

*Id.* at 195-96 (citations and quotations omitted).

The two circuits that have actually grappled with the question of how *Carden* and *Navarro* interact have ultimately determined (1) *Navarro* does not speak to the question of how to determine the citizenship of a trust and (2) *Carden* dictates that the citizenship of any non-corporate artificial entity is determined by considering all of the entity's members.  *See Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F.3d 192, 200-01 (3d Cir. 2007); *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1337-40 (11th Cir. 2002), *overruled in part on other grounds by Merrill Lynch, Pierce, Fenner & Smith v. Dabit*, 547 U.S. 71, 89 (2006).  The Americold entities assert, however, this court is bound to accept the majority approach and read *Navarro* as standing for the proposition that the citizenship of a trust is always determined by

-10-

examining the citizenship of the trustees. In support of this proposition, they say this court has, "on at least three occasions, indicated that under *Navarro*, where a trustee actively controls a trust, the trustee's citizenship controls for purposes of diversity." Appellees' Supplemental Br. at 3 (citing *Ravenswood*, 651 F.3d at 1222 n.1; *Sola Salon*, 500 F. App'x at 728 n.2; *Lenon*, 136 F.3d at 1371). None of these three cases support the Americold entities' assertions.

In *Ravenswood*, the parties conceded on appeal that subject matter jurisdiction was lacking because the parties were not completely diverse. 651 F.3d at 1222. The only question in the case was whether the district court had remedied the jurisdictional defect when it severed both claims and parties in the middle of the litigation. *Id.* at 1223. In a footnote, this court concluded it was unnecessary to resolve whether the citizenship of a trust was based on the citizenship of its trustees, beneficiaries, or some combination thereof because "[u]nlike a situation in which both parties erroneously assert federal jurisdiction exists thereby triggering this court's sua sponte obligation to examine its own jurisdiction, there is no need to decide the propriety of the parties' agreement that diversity jurisdiction does not exist because it presents no concern a federal court will exceed its power." *Id.* at 1222 n.1. Accordingly, *Ravenswood* concluded there was "no occasion in this case to decide if and under what circumstances beneficiaries' citizenship may affect a trust's citizenship for the purposes of the diversity analysis." *Id.*

-11-

*Sola Salon*, an unpublished case with no binding precedential force, 10th Cir. R. App. P. 32.1(a), involved a suit by a trustee in her own name. 500 F. App'x at 725, 727 n.2. That being the case, the rule set out in *Navarro* clearly controls and the decision is of absolutely no relevance to the question whether, when a trust itself is a party to litigation, the trust's citizenship can be determined by considering less than all the trust's members. *Lennon*, also involves a situation in which "the trustees brought suit in their own name in their capacities as trustees of an express trust." 136 F.3d at 1370. Furthermore, the party challenging diversity jurisdiction did "not challenge the trustees' capacity to bring [the] action." *Id.* at 1370 n.2. It is worth noting, however, that *Lennon* recognized the result might well be different if the relevant trusts were parties to the action. *Id.* at 1371 & n.4 (noting the decision in *Carden* might well dictate a different result were the ERISA plans at issue in the case themselves parties to the lawsuit).

Based on the authorities set out above, this court distills the following rule. When a trustee is a party to litigation, it is the trustee's citizenship that controls for purposes of diversity jurisdiction, as long as the trustee satisfies the real-party-in-interest test set out in *Navarro*. When the trust itself is party to the litigation, the citizenship of the trust is derived from all the trust's "members."[3]

_____

[3]This court need not address the Americold entities' argument that the rule set out in *Carden* is less than fair. As the *Carden* Court noted, the distinctions

(continued...)

That rule does not, standing alone, fully resolve this case because it is necessary to determine which individuals constitute a trust's "membership." The two courts that have considered this question have both determined that, at a minimum, a trust's membership includes the trust's beneficiaries. *Emerald Investors Trust*, 492 F.3d at 205 (concluding both trustees' and beneficiaries' citizenship must be included in determining a trust's citizenship); *Riley*, 292 F.3d at 1338-40 (holding a trust's citizenship is determined solely by reference to the citizenship of the trust's beneficiaries). For those reasons cogently set out by the court in *Emerald Investors Trust*, we conclude any potential definition of the term "members" that is limited to trustees would be inconsistent with the Supreme Court's decision in *Carden*:

> [A] trustee-only rule in an action by the trust itself seems to contradict *Carden* because that case held that an "artificial entity," a term that we will treat as including a trust, should assume the citizenship of all of its "members." [494 U.S. at 195] The trustee-only rule may contravene *Carden* because it disregards the citizenship of the trust's beneficiary who may be in a position similar to that of the limited partners in a limited partnership.

---

[3](...continued)
established in Supreme Court case law between (1) corporations and other artificial entities and (2) the citizenship of an artificial entity and the citizenship of that entity's trustee/limited partner when properly bringing suit in his individual capacity "can validly be characterized as technical, precedent-bound, and unresponsive to policy considerations raised by the changing realities of business organizations." *Carden v. Arkoma Assocs.*, 494 U.S. 185, 196 (1990). As the Court has made clear, however, any effort to alter the rules clearly laid out in *Carden* must be directed to Congress, rather than to the courts. *Id.* at 196-97.

492 F.3d at 202. Given the unique facts of this case, it is unnecessary to go any further and determine whether a trust's membership also includes its trustees. When Americold Realty Trust's beneficiaries are considered, the record does not establish that either of the Americold entities was completely diverse from ConAgra or Swift-Eckrich at the time of the filing of the complaint in Kansas state court. *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570–71 (2004); 28 U.S.C. §§ 1332(a), 1441(a). Thus, this court leaves for another day, when the issue is properly briefed and its disposition will have an impact on the outcome of the case, the question whether a trust's membership includes, in addition to its beneficiaries, its trustees.

## IV. CONCLUSION

The Americold entities have failed to carry their burden of demonstrating the existence of diversity jurisdiction. *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013) ("[B]ecause the jurisdiction of federal courts is limited, there is a presumption against [federal] jurisdiction, and the party invoking federal jurisdiction bears the burden of proof." (quotation omitted)).[4] In response to this court's request for supplemental briefing, the Americold entities declined to offer any evidence as to the citizenship of the beneficiaries of

---

[4]At oral argument, ConAgra Foods and Swift-Eckrich conceded federal jurisdiction was lacking should this court determine it must consider the citizenship of Americold Realty Trust's beneficiaries in determining the citizenship of Americold Realty Trust.

Americold Realty Trust, instead choosing to rely exclusively on their assertion that the trust's citizenship was derived solely from the citizenship of its trustees. Thus, the record fails to establish Americold Realty Trust is not a citizen of Delaware, Nebraska, or Illinois, the states of which ConAgra and Swift-Eckrich are citizens. *See* 28 U.S.C. § 1332(c)(1). This same evidentiary deficiency impacts the citizenship of Americold Logistics, LLC. As the Americold entities recognize, the citizenship of Americold Logistics, LLC is determined by reference to its sole owner, Americold Realty Trust. *See supra* n.2. Furthermore, because the parties were given a full opportunity by this court to demonstrate the citizenship of Americold Realty Trust by reference to its beneficiaries, there is no need for further proceedings on remand. Accordingly, this court **REMANDS** this case to the district court to vacate its judgment on the merits and remand the matter to state court.